```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
ELLA MAE LeBREW and ALBERTA LeBREW,

                    Plaintiffs,
                                            REPORT &
       -against-                            RECOMMENDATION

ALEXANDER REICH et al.,                     03-CV-1832 (JG) (KAM)

                    Defendants.
----------------------------------------X
MATSUMOTO, United States Magistrate Judge:
```

Before the Court are two submissions by former defendant Gerald Oxford, *pro se*: (1) a letter dated March 10, 2005 and filed on March 17, 2005 (doc. no. 146) and (2) an "Amended Third Party Complaint (Counterclaim)" dated and filed on January 27, 2006 (doc. no. 172). Mr. Oxford was originally a named defendant in this action, but was eliminated as a defendant as of March 18, 2005, when plaintiffs filed their third amended complaint. The case settled and was closed in June 2005. By order dated September 2, 2005, the Honorable John Gleeson, United States District Judge, referred the requests for relief sought by Mr. Oxford in these submissions to the undersigned for a Report and Recommendation. For the reasons that follow, it is respectfully recommended that Mr. Oxford's March 10, 2005 and January 27, 2006 submissions be deemed untimely and/or procedurally defective and the relief requested therein be denied.

# I. BACKGROUND

In April 2003, plaintiffs Ella Mae LeBrew and Alberta LeBrew commenced this action by the filing of the complaint and the issuing of a summons. Plaintiffs alleged that defendant Alexander Reich and others induced them to enter into several unconscionable and illegal agreements as part of a conspiracy to defraud plaintiffs of mortgage proceeds and of plaintiff Ella Mae LeBrew's home. Plaintiffs also asserted a breach of contract claim against Northplains Construction & Engineering Company ("Northplains"), and its president Gerald Oxford, alleging that Northplains had failed to complete certain repairs to the subject property which it had contracted to perform. Mr. Oxford and Northplains failed to answer or otherwise respond to the complaint, despite being properly served and notified of the commencement of the action. (See Doc. No. 3, Affidavit of Service, dated May 6, 2003.) Plaintiffs filed an amended complaint on July 8, 2003 (doc. no. 12), although plaintiffs did not file with the Court any proof that they served it upon Mr. Oxford. Mr. Oxford did not answer or otherwise respond to the amended complaint.

On July 16, 2003, Mr. Oxford attended a show cause hearing before Judge Gleeson on plaintiffs' motion for a preliminary injunction. (See Doc. No. 146, Letter from Gerald Oxford to Judge John Gleeson, dated Mar. 10, 2005 ("Mar. 10, 2005

Oxford Letter"), Ex. 1Y, Partial Transcript of Hearing, dated July 16, 2003 ("Hearing Transcript"); Doc. No. 172, Third Party Complaint (Counterclaim) ("Third Party Compl."), filed Jan. 27, 2006, Ex. E3, Hearing Transcript.) At the hearing, Mr. Oxford voiced several objections regarding the merits of the case, however, he never requested additional time to answer or otherwise respond to the complaint or amended complaint. Judge Gleeson informed Mr. Oxford that the evidence he attempted to present to contradict the allegations in the complaint was not relevant to the show cause hearing. (Third Party Compl., Ex. E3, Hearing Transcript, at 11.) Judge Gleeson strongly urged Mr. Oxford to speak with a lawyer. (Id. at 11-12; see also Doc. No. 13, Order & Preliminary Injunction, at 2.)

Thereafter, the Court mailed several orders to Mr. Oxford's last known address, which were sent back as undeliverable. (See, e.g., Doc. Nos. 30, 41.) On September 21, 2004, plaintiffs served and filed a second amended complaint. (See Doc. No. 91, Second Amended Complaint; Doc. No. 92, Certificate of Service on all Defendants, filed Sept. 21, 2004.) Mr. Oxford and Northplains failed to answer or otherwise respond to the second amended complaint. In November 2004, discovery commenced. Throughout the ensuing months, the undersigned held several status and discovery conferences. Despite the Court's orders that plaintiffs notify all parties of the Court's

conferences, Mr. Oxford and Northplains failed to appear at a single conference or otherwise indicate any interest in defending against plaintiffs' claims. (See, e.g., Minute Entries of Oct. 4, 2004, Oct. 20, 2004, Nov. 4, 2004 and Jan. 25, 2005.) By letter dated February 22, 2005 (doc. no. 132), plaintiffs' counsel advised Judge Gleeson that "defendants Oxford and Northplains are being settled out of the case," and that plaintiffs intended to file a third amended complaint and amend the caption to conform to the evidence that was developed during discovery.

By letter dated March 10, 2005 to Judge Gleeson, filed with the Court on March 17, 2005, Mr. Oxford denied the allegations in the second amended complaint, which had been served and filed in September 2004, regarding the construction work Northplains had performed on the subject property. (See Mar. 10, 2005 Oxford Letter.) He asserted, *inter alia,* that Northplains had completed a significant amount of the work on plaintiffs' home pursuant to its contract with plaintiffs, and submitted photographs and other exhibits in support of his contentions. (See id.) Mr. Oxford further stated that in January 2005, he had received a call from plaintiffs' counsel, informing him that plaintiffs were willing to release him from the case. (Id. at 8.) Following that conversation, plaintiffs had sent to him a stipulation by which plaintiffs agreed to

dismiss all claims against him and Northplains, provided that he supply a sworn statement regarding all information within his knowledge concerning the events alleged in plaintiffs' complaint, and that he be available to testify at trial. (See id., Ex. 3-Orange.[1])  Mr. Oxford stated that he never signed the stipulation because he did not agree to its terms.  (Id. at 8.)  Mr. Oxford contended that, by dismissing him from the case, plaintiffs only intended to prevent him from revealing "credible evidence that [he] would have brought to th[e] trial exposing them of the lies they have put forth in this case."  (Id. at 9.)  In his March 10 letter, Mr. Oxford also included a "demand for relief," wherein he requested "actual and statutory" damages, punitive damages and costs, disbursements and fees, for the injury he purportedly incurred as a result of alleged false statements made by plaintiffs and their counsel, Fried, Frank, Harris, Shriver & Jacobson LLP ("Fried Frank"), regarding the work allegedly performed by Northplains on the subject property.

On March 18, 2005, plaintiffs filed a third amended complaint, in which Mr. Oxford and Northplains were not named as defendants.  (See Doc. No. 143, Third Amended Complaint.)  Thus, Mr. Oxford and Northplains were terminated from the docket on March 21, 2005.  By letter dated March 28, 2005, plaintiffs

---

[1] The Court adopts Mr. Oxford's references to his numbered and color-coded exhibits.

notified the Court that neither Mr. Oxford nor Northplains were named defendants in the third amended complaint and that, accordingly, Oxford's March 10 letter "require[d] no action from the Court or the plaintiffs." (Doc. No. 145, Letter from Andrew T. Gardner, at 1.) Plaintiffs further asserted that "a letter to the Court is not, in any event, a pleading" and "the issue of the settlement agreement is moot [because] Mr. Oxford and Northplains are no longer defendants, and presumably none of the parties will attempt to enforce an unexecuted settlement agreement." (Id. at 1-2.)

Meanwhile, as of approximately March 2005, the remaining parties to the action were engaged in settlement discussions. The parties ultimately consummated a settlement and filed a stipulation of dismissal with the Court in June 2005. The case was closed on June 8, 2005. The following September, however, Mr. Oxford personally visited the chambers of Judge Gleeson, "expressing his desire to assert claims against plaintiffs and plaintiffs' counsel." (Order dated Sept. 2, 2005.) In a subsequent order, Judge Gleeson noted that "[t]he dismissal of claims against Oxford, and the termination of the case as against him during that same time period, had caused me to believe Oxford's claims were moot." (Id.) Recognizing that Mr. Oxford intended to pursue his "claims," Judge Gleeson referred the requests for relief, sought by Mr. Oxford in his

March 10, 2005 letter, to the undersigned for a Report and Recommendation.  (See Order dated Sept. 2, 2005.)

Thereafter, the undersigned ordered plaintiffs and other interested parties to state their position regarding "the effect of Mr. Oxford's 3/10/05 letter prior to the filing of plaintiffs' third amended complaint on 3/18/05."  (Order dated Sept. 6, 2005.)  Fried Frank responded by letter dated September 14, 2005, stating that Mr. Oxford's March 10 letter had only been served on the firm on March 21, 2005.  Plaintiffs contented that because the third amended complaint was filed on March 18, 2005, by the time Mr. Oxford served his letter on March 21, 2005, he and Northplains were no longer parties to the action.  Fried Frank urged the Court not to consider Mr. Oxford's March 10 letter as a counterclaim because (1) Mr. Oxford's *ex parte* "letter is not a pleading," (2) any counterclaims should have been asserted as part of an answer, which neither Mr. Oxford nor Northplains ever filed, despite having been named as defendants in complaints for over two years and (3) because Mr. Oxford and Northplains were not parties to the action at that point, they "had no power to bring counterclaims." (Doc. No. 168, Letter from Andrew T. Gardner, dated Sept. 14, 2005, at 2.)  Plaintiff Alberta LeBrew also wrote to the undersigned, urging the Court to deny Mr. Oxford the relief he sought in his March 10, 2005 letter, because "Mr. Oxford was afforded every opportunity to

respond to the charges brought against him, yet he didn't." (Doc. No. 169, Letter from Alberta LeBrew, filed Sept. 21, 2005.)

By letter dated October 21, 2005, Mr. Oxford informed the undersigned that he intended to respond to Fried Frank's September 14, 2005 letter by "the end of th[e] month." (Doc. No. 170.) However, Mr. Oxford made no further contact with the Court until January 27, 2006, when he filed a document entitled "Third Party Complaint (Counterclaim)." (Doc. No. 172, Third Party Compl.) This submission included a letter from Mr. Oxford to Judge Gleeson and the undersigned, in which Mr. Oxford requested that the case be reopened so that he could "prove [his] innocence and . . . show there are others . . . who are innocent also." (Id. at 2.) Mr. Oxford again challenged the truthfulness of the allegations asserted against him and Northplains in plaintiffs' first and second amended complaints. Mr. Oxford claimed that he answered the complaint by appearing and asserting objections at the show cause hearing on July 16, 2003 before Judge Gleeson. (Id. at 3.) Mr. Oxford also asserted "counterclaims" against both plaintiffs and Fried Frank, alleging that he was entitled to damages against them, on the grounds that they caused harm to his reputation and character and caused "tremendous stress . . . to [his] health and well-being." (Id. at 13, ¶¶ 50-54.) Mr. Oxford further sought to have his name and that of Northplains removed entirely from the docket of this case. (Id. ¶ 55.)

Thereafter, Fried Frank wrote to the Court, solely on its own behalf, stating that it did not intend to respond to Mr. Oxford's January 27, 2005 submission, except to state its belief that the submission "is neither procedurally nor substantively sound." (See Doc. No. 171-1, Letter from Andrew T. Gardner, dated February 15, 2006.)

**II. DISCUSSION**

**A. Mr. Oxford's March 10, 2005 Submission**

Mr. Oxford's March 10, 2005 letter may be liberally construed as an answer to the allegations in the second amended complaint, as a counterclaim against plaintiffs, and as a third-party complaint against Fried Frank. See Phillips v. Girdich, 408 F.3d 124, 128 (2d Cir. 2005) (noting that pleadings of pro se litigants should be construed liberally and that technical irregularities in the pleadings are excusable). For the following reasons, it is respectfully recommended that the "answer" be deemed untimely, that the "counterclaim," and "third-party complaint" be dismissed and that the relief requested therein be denied.[2]

---

[2] The Court notes that, contrary to plaintiffs' contention, Mr. Oxford was still a party to the action as of the date of his March 10, 2005 submission, and as of the date it was received and filed with the Court on March 17, 2005. The third amended complaint was not filed until March 18, 2005.

### *1. The Answer and Counterclaim Against Plaintiffs*

Mr. Oxford's March 10 "answer" and "counterclaim" are untimely. Contrary to Mr. Oxford's belief, his appearance at the July 16, 2003 show cause hearing did not constitute an answer. An answer is a written pleading that must be served upon opposing parties and filed with the Court, within 20 days of service of the summons and complaint. Fed. R. Civ. P. 12(a). Counterclaims are subject to the same 20-day time limit as an answer, because any counterclaims must be asserted as part of a responsive pleading. Fed. R. Civ. P. 12(b); 5B Wright & Miller, Federal Practice and Procedure: Civil 3d § 1348, at 53 (West 2004). Pursuant to Rule 15(a), a defendant's time to answer is renewed upon the filing of each successive amended complaint. That rule provides that "[a] party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within 10 days after service of the amended pleading, whichever period may be the longer . . . ." The second amended complaint — the most recent complaint naming Mr. Oxford as a defendant — was served upon Mr. Oxford on September 21, 2004. Under Rule 15(a), the time remaining for Mr. Oxford to have answered the original complaint had long expired, and thus Mr. Oxford had ten days from September 21, 2004 to timely file an answer to the second amended complaint. Accordingly, any answer and counterclaim against plaintiffs filed in March 2005 was

untimely.

Pursuant to Rule 6(b)(2) of the Federal Rules of Civil Procedure, a court may extend a party's time to answer, "upon motion[,] . . . where the failure to act was the result of excusable neglect." In determining whether a party's neglect is excusable, the court shall take into consideration all the relevant circumstances, including such factors as: "danger of prejudice to the [nonmoving party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 395 (1993). At a minimum, a party must demonstrate "good faith and a reasonable basis for noncompliance." In re Painewebber Ltd. P'ships Litig., 147 F.3d 132, 135 (2d Cir. 1998).

Here, Mr. Oxford failed to make the requisite motion for an extension of time to answer and counterclaim, and has also failed to proffer any excuse for his noncompliance with the Federal Rules of Civil Procedure. Mr. Oxford was on notice of the pendency of this action from its inception. He was served with the original complaint in April 2003. (See Doc. No. 3, Affidavit of Service, filed May 6, 2003). He apparently received subsequent Court orders regarding the July 16, 2003 show cause hearing, because he appeared at that hearing. He was also

undoubtedly served with the second amended complaint in September 2004. (Doc. No. 92, Certificate of Service on all Defendants, filed Sept. 21, 2004.) Yet, Mr. Oxford offers no explanation as to why he waited until March 2005 to interpose an answer and counterclaim to the second amended complaint. The Court can find no reasonable basis for his delay.

In addition, to allow Mr. Oxford to raise defenses and assert counterclaims in March 2005 would result in prejudice to plaintiffs, particularly after Mr. Oxford had been advised by plaintiffs' counsel in January 2005 that he and Northplains were going to be dismissed as defendants. By March 2005, the conclusion of the already lengthy and contentious discovery period was imminent and the parties had commenced settlement discussions. (See Minute Entry of Apr. 5, 2005.) Plaintiffs, who were represented by counsel on a *pro bono* basis, had already expended considerable time, resources and funds in litigating their claims, without any indication that Mr. Oxford and Northplains intended to assert any defense or pursue claims against them. Although the Court is mindful of Mr. Oxford's *pro se* status, unfamiliarity with the Federal Rules of Civil Procedure is not a sufficient excuse for violating them. See Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law.") (quotation marks and citation

omitted); In re Cosmopolitan Aviation Corp., 763 F.2d 507, 515 (2d Cir. 1985) ("The excusable neglect standard can never be met by a showing of inability or refusal to read and comprehend the plain language of the federal rules."); Allstate Ins. Co. v. Administratia Asigurarilor De Stat, 163 F.R.D. 196, 198-199 (S.D.N.Y. 1995). Thus, it is respectfully recommended that Mr. Oxford's March 10, 2005 submission, construed as an answer to plaintiffs' second amended complaint and a counterclaim against plaintiffs, be dismissed as untimely.[3]

### 2. *The Third-party Complaint Against Fried Frank*

Where a litigant seeks to bring in and assert new claims against a party that has not yet appeared in the action, the movant must effectuate service upon that party in accordance with Rule 4 of the Federal Rules of Civil Procedure. See 4B Wright & Miller § 1146, at 437-38; Apple v. Jewish Hosp. and Medical Center, 829 F.2d 326, 332 (2d Cir. 1987) ("Original service of process is . . . a *sine qua non* requirement for a court to acquire jurisdiction over an additional party."). Prior

---

[3] Additionally, the Court notes that Mr. Oxford, who is not an attorney, may not represent the interests of Northplains. See Rowland v. California Men's Colony, 506 U.S. 194, 202 (1993); Pecarsky v. Galaxiworld.com Ltd., 249 F.3d 167 (2d Cir. 2001) (corporation can only appear in court with counsel, and cannot be represented *pro se* by its principal); Pridgen v. Andresen, 113 F.3d 391, 393 (2d Cir. 1997) ("a layperson may not represent a corporation") (citation omitted).

to Mr. Oxford asserting a third-party complaint against it, Fried Frank was not a party to this action; it had appeared only as counsel to plaintiffs. Therefore, Mr. Oxford was required to serve the third-party complaint on Fried Frank pursuant to the procedures outlined in Rule 4.

Specifically, Mr. Oxford was required to serve the third-party complaint, together with a summons, upon "an officer, [or] a managing or general agent" of Fried Frank, within 120 days of filing the third-party complaint with the Court. Fed. R. Civ. P. 4(c)(1), (h), (m). Rule 4(m) provides, in relevant part: "[i]f service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative . . . , shall dismiss the action without prejudice as to that defendant . . . ." Mr. Oxford merely mailed his "third-party complaint," to Fried Frank's office and did not include a summons. Thus, he did not serve Fried Frank in the prescribed manner and within the 120 days mandated by Rule 4. As a result, the Court never obtained *in personam* jurisdiction over Fried Frank and was powerless to adjudicate any claims asserted against it. See Omni Capital Int'l, Ltd. v. Rudolf Wolf & Co., 484 U.S. 97, 104 (1987) ("Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied"); Apple, 829 F.2d at 332; Barnett v. City of

Yonkers, 731 F. Supp. 594, 601-02 (S.D.N.Y. 1990). While the Court may, in its discretion, extend the movant's time to effectuate service upon a showing of good cause, Fed. R. Civ. P. 4(m), it declines to do so here, where Mr. Oxford proffers no reasonable explanation for his failure to properly serve Fried Frank. See National Union Fire Ins. Co. of Pittsburgh v. Sun, 1994 WL 463009, at *4 (S.D.N.Y. Aug. 25, 1994); Shaw v. Rolex Watch U.S.A., Inc., 745 F. Supp. 982 (S.D.N.Y. 1990) (dismissing complaint upon plaintiff's "complete failure to justify" untimely service).

Even assuming, *arguendo*, that Mr. Oxford properly served Fried Frank, his "third-party complaint" should be dismissed as untimely. Where a party fails to file and serve a third-party complaint within ten days of serving the "original answer," that party must obtain leave of the court, "on motion upon notice to all parties to the action," to implead a third party. Fed. R. Civ. P. 14(a). Where, as here, the third party complaint is filed simultaneously with an untimely answer, "[d]efendant's tardiness in filing an answer to the underlying complaint should not, and does not, serve to obviate defendant's obligation to seek leave of court in order to file [a] third-party complaint." U.S. Steel Supply, Inc. v. Alco Standard Corp., 1990 WL 304252, at *2 (N.D. Ill. May 4, 1990). Thus, Mr. Oxford was required to make a motion for leave to file the third-

party complaint, which he failed to do.  See id.

In any event, under Rule 14(a), it is within the Court's sound discretion whether to allow impleader, after considering whether:  (1) the movant deliberately delayed or was derelict in filing his motion; (2) prejudice will result to the third party defendant; (3) the trial of the principal action would be delayed or unduly complicated; and (4) the proposed third-party complaint states a claim under which relief may be granted.  Anglo Amer. Ins. Group, P.L.C. v. CalFed, Inc., 899 F. Supp. 1070, 1075 (S.D.N.Y. 1995).  The Court also takes into consideration whether granting such a motion would serve the purposes of promoting judicial economy, achieving consistency of results and avoiding "circuity of action."  Oliner v. McBride's Indus., Inc., 106 F.R.D. 14, 20 (S.D.N.Y. 1985); see also Rosario v. Amalgamated Ladies' Garment Cutters' Union, Local 10, I.L.G.W.U., 605 F.2d 1228, 1247 (2d Cir. 1979); In re Agent Orange Prod. Liability Litig., 100 F.R.D. 778, 780 (E.D.N.Y. 1984).

Here, as discussed above, Mr. Oxford has proffered no excuse for his considerable delay in bringing third-party claims against Fried Frank.  He has known of the facts which underlie his claims because plaintiffs, by Fried Frank, filed the original complaint.  Fried Frank would suffer prejudice if it was now required to defend against Mr. Oxford's claims, one year after he

ceased being a defendant and the case was settled. To allow Mr. Oxford to implead Fried Frank at this juncture, would undermine, rather than promote, judicial economy. See CSA Capital, Inc. v. Mountbatten Surety Co., 1997 WL 760515 (S.D.N.Y. Dec. 9, 1997) (denying motion to file third-party complaint where discovery had closed and the parties had reached settlement); Kopan v. George Washington Univ., 67 F.R.D. 36 (D.D.C. 1975). For all of these reasons, it is respectfully recommended that the March 10, 2005 submission by Mr. Oxford and Northplains, insofar as it is construed as a third-party complaint against Fried Frank, be dismissed and the relief requested therein be denied.

**B.    Mr. Oxford's January 27, 2006 Submission**

Only a party may file an answer or third-party complaint in any action. See Fed. R. Civ. P. 12, 14. As of March 18, 2005, when plaintiffs filed the third amended complaint, Mr. Oxford and Northplains were no longer defending parties to this action. See Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect.") (quoting International Controls Corp. v. Vesco, 556 F.2d 665, 668 (2d Cir. 1977); Jones v. Parmley, 2005 WL 928666, at *1 (N.D.N.Y. Apr. 20, 2005) ("[A] party that is not named in the caption of an amended complaint is

not a party to the action."). In January 2006, Mr. Oxford and Northplains were no longer parties and, thus, were not in the proper position to file any additional pleadings in this case. Accordingly, it is respectfully recommended that any claims stated in the January 27, 2006 submission be dismissed and the relief requested therein be denied.

### III. CONCLUSION

In accordance with the foregoing, it is respectfully recommended that the March 10, 2005 and January 27, 2006 submissions by Mr. Oxford and Northplains be dismissed and the relief requested therein denied, on the grounds that they are untimely and otherwise procedurally defective. Any objections to this Report and Recommendation must be filed with Judge Gleeson within ten days of the date of its entry. Failure to object within ten days of the date of entry will preclude appellate review by the district court. See 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Small v. Secretary of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989).

Any requests for extensions of time to file objections should be made to Judge Gleeson.

**SO ORDERED.**
Dated: May 12, 2006
       Brooklyn, New York

                                        /s/
                              **Kiyo A. Matsumoto**
                              United States Magistrate Judge
                              Eastern District of New York


A copy of this Report and Recommendation is deemed served by ECF on represented parties. *Pro se* parties, including but not limited to Mr. Oxford and Northplains, shall receive this Report and Recommendation by overnight delivery.